We are ready for argument in our first case, Ms. Harrison. Thank you, Your Honor. May it please the Court. Your Honor, I'm here representing two severely disabled individuals. Both have quadriplegian requirements like here. I'd like to start out today, because the case has multiple issues and a lot of facts and a lengthy record, talking about what this case is not about. And the defendants who tried to make this case solely about a reduction in services which happened in 2010. Certainly, that was one of the many violations that we've alleged here. But I'd call your attention to the fact that these violations, the due process violations, began in February 2009, when Richard Stogsdill first began to obtain some relief through the administrative proceedings. There was a fair hearing. This Court has said in Dovey Kidd that a final decision has to be reached within 90 days, under 136 A.A. 8. In the first Stogsdill fair hearing, he filed the appeal in February 2009. He, quote, won that appeal. So, are you covering an issue now, or is this background? Well, both, Your Honor. But certainly, if you all have questions, I want to answer the questions that you have. Why don't you tell us how you see the District Court's opinion as being erroneous on each particular issue? Because that's what we have to decide. Yes, sir. Okay. The first issue is the issue of the District Court dismissing CMS as a defendant in the case. They were dismissed under a motion to dismiss. We allege that under the Federal Administrative Proceedings Act, their action of approving the 2010 amendments to the Medicaid Act was arbitrary and comprehensive. May I ask you a question about that? Yes, ma'am. The District Court, in dismissing the federal defendant, the District Court says that the plaintiffs failed to identify a specific final agency action that has caused their alleged injuries. They make only broad, general allegations about the CMS and the federal defendants and their duties in administering the Act. Is that incorrect? Did the District Court misunderstand your complaint? I believe so, Your Honor. Every five years, the Medicaid Act says that an application has to be filed to obtain funding. I understand that. So it is clear from your complaint that you are alleging not only this kind of broad failure to supervise and enforce, but also specifically challenging the approval of the 2010 waiver. That is one of the specific things that we did challenge. That was a final act when they approved the waiver amendment. And as the South Carolina Court of Appeals ruled in Stogstall, the sole reason for approving that amendment was budgetary. The state said they had a budget reduction. And CMS, the application itself showed that the cost when they reduced home-based services went from an average of $37,000 to an average of $51,000. I'm sorry, if I may, just to clarify, a new waiver program went into effect in 2015, did it not? Does that also have the caps that form the basis for your challenge? Well, unbeknownst to the public, the first waiver amendment, and the program has been going on for a long time, it's renewed every five years. Right. So the first renewal that is at issue here was the 2010 renewal. It expired in 2014. So the public, because none of this has been done in the public, assumed that there was a new waiver amendment because it was to expire December 2014. When we argued in the South Carolina Supreme Court, DHHS's attorneys told that court, CMS can change the waiver on a dime. CMS approving this waiver supersedes federal law. Well, what we found out, your honors, is that CMS had not approved the waiver when it ended in, its term expired in 2014. I'm sorry, tell us how your clients have, what act injured your clients by the federal defendants? Well, a really important document is the Olmstead update number four, which says that if you have a budget reduction, what you can do is you can limit the people coming in, but you can't limit the services that the person needs. So when they approved that waiver, they approved it based on false information that there was a budget reduction. Because there was no budget reduction, it cost tremendously more. Okay, let's assume there's an injury. Tell us what remedy you seek against the federal defendants. We would like for it to be remanded, and we'd like to take discovery. We never had an opportunity for discovery. Okay, so now what do you want to discover? I'm having trouble figuring out what your claim is. They have consistently, they have known about all the multiple problems in South Carolina, and they have consistently approved a waiver document that injures my people because it imposes caps. Caps are still being imposed on my people even now. You have to go through, usually it's a year or more of administrative proceedings just to exceed the caps. And DDSN, which administers the waiver, still does not have authority to exceed the caps. So there's no standards. They should be required to require the state to establish reasonable standards. They should put in that document what this court has said, which is reasonable promptness means that you have to have a final administrative decision within 90 days. They should require the state to... Do they mean, I'm sorry, they meaning the federal defendants? CMS, yes, Your Honor. They have a role to play, and I think... But asking them to play the appropriate role, that sounds like that's the kind of thing that is committed to agency discretion under the APA. It seems like now you're back into, we just think the agency ought to do a better job supervising South Carolina in the way it administers this program, and I don't see how that is not something that is committed to agency discretion, something we could review. We're not asking for general oversight. Well, it sounds like that's exactly what you just asked for. The amendments they have approved are totally contrary to the Americans with Disabilities Act. Let me see if I can tell you, this is the concern I'm having. On the one hand, if what you're asking for is sort of the federal defendant ought to do a better job managing this program, that's committed to agency discretion. I agree. If you are specifically challenging the 2010 waiver approval, that seems to be moot, unless you... Do you have a challenge outstanding to the 2015 waiver? Well, it's an ongoing violation because... But didn't the Cap 65... About the new waiver program, which was supposed to go into effect, I was under the impression, in 2015, and whether or not there are currently caps in place that form the basis of your challenge, the basis of a challenge. They amended the waiver. It wasn't amended in 2017. They extended for 11 extensions of three months. And in 2017, when CMS approved the waiver amendment, it continues to have caps, and it simply says, caps may be exceeded if the person is at risk of institutionalization. Isn't that really a critical difference, given your claim? I mean, that just seems like night and day. Your whole claim was that the caps were not being exceeded when there was a risk of institutionalization. But the state continues to impose the caps. Is my understanding not correct? Is Stogsdill... Isn't Stogsdill currently receiving more hours of care under the waiver program than he was prior to 2010? Stogsdill is receiving more hours than he was in 2010. Then how do the caps hurt him? Because his doctors, since 2014, every doctor has said he needs 56 hours a week of nursing. And there are no standards. This is really critical, Your Honors. The South Carolina Supreme Court, in adopting the decision in Stogsdill in the Court of Appeals, said that CMS approval of a waiver carries the force and effect of law. So in South Carolina, whatever, CMS, a bureaucrat in CMS, says the rule is it doesn't matter what the ADA says. It doesn't matter what the Medicaid Act says. It doesn't matter what reasonable promptness says. How is Stogsdill harmed by the waiver program is the question. Right. Stogsdill is harmed in two ways. He still is experiencing horrendous, horrendous pain on the nights that the nurse is not there. They still have not... But doesn't it have to be traceable? The remediable harm, doesn't it have to be traceable to the waiver? And he's actually doing, or at least he's receiving more care since, is what I'm trying to grasp. But the Medicaid Act says that services must be provided in the amount, duration, and scope needed. It says they must be provided with reasonable promptness. And we have, and this is a really important issue also, Your Honor, and our due process issue. The state Medicaid manual, which is a document promulgated by CMS, and it's discussed in the Berlin case, Shockness versus Berlin. Can CMS require South Carolina to remove the caps? Yes, Your Honor. They could say this is in violation of the CMS directive. And in the Olmstead update number four, it's a violation of the ADA. Would that mean, how would that manifest itself? Would that mean that they would withdraw their approval of the waiver? What specific action would that translate into? That would simply require an amendment to the waiver document. And at the hearing. Did they get to determine how the state translates its budgetary constraints? That was addressed in Olmstead number four. And what CMS said in Olmstead update number four was, if you have a budget problem, what you're supposed to do is limit persons coming in. But you can't cap needed services, because that would violate the Medicaid Act's requirement that services be provided to protect the health and welfare of waiver participants. Thank you very much, Ms. Harrison. You have some time for rebuttal. Rebuttal. Mr. Wodarczyk? Yes, Your Honor. May it please, Your Honor. Damon Wodarczyk on behalf of the state defendants. I'd like just to clarify, it seems like the court may be focusing on the waiver and how it applies now. It is correct. A capsule put in place in 2010, which resulted in these lawsuits. Not just this lawsuit, but other lawsuits because services were reduced. I note that the time is not running on our calendar. Okay. Which is what I thought this case is about, was those reductions in services that took place in 2010. That's what's set forth in the pleadings. Those waivers have been renewed. They are currently in effect, I believe the IVRD waiver, which Mr. Stogsville falls under, has been finalized. I believe the head and spine injury waiver that Mr. Levin is under is still in the process of being finalized. They still do contain caps, but they did put in specific language to comply with the Olmstead Directive, which basically says that if those caps would result in a significant risk of institutionalization, then there's a way to provide services in excess of those. Are those issues raised by the complaint in this case? The original complaint alleged that the reduction in services violated the Olmstead holding because there was no way to get services in excess of the caps. I believe that was properly pled. I believe that's what we've been trying this case since 2012 on. I would note that not only does Mr. Stogsville receive almost, well, he does receive 24-hour care. Mr. Levin has received services that exceed the caps. This entire case initially was that his attended care hours were reduced from 56 to 49 hours per week. During the course of litigation and after discovery, there was an issue about nursing services. Judge Anderson ruled it wasn't right because no decision has been made. The issue at that point in time was whether or not he should get 60 hours of nursing services. I would note currently, which is in our brief, that now Mr. Levin receives 84 hours per week of nursing, 42 hours a week of attended care for a total of 126 hours. He is only left unsupervised or uncared for by a paid attendant for 6 hours a day. The record reflected that even prior to that, he would go to sleep for 8 hours a day and his mother would go to bed and then wake up the next morning. He, for all practical intents and purposes, are receiving in excess of what the issue was in this complaint. Can you just remind me what relief are the plaintiffs seeking against you? Is this a damages case or is this just perspective relief? It was perspective relief. It's not damages, which in part is why I believe Judge Anderson properly dismissed Mr. Stobbsville's claim under either not wanting to exercise declaratory jurisdiction or the abstention doctrines that he stated because at the same time that we were litigating this case in federal court for perspective relief, he was litigating the state law action, which actually resulted in an order in his favor. Let me ask you about that. It's kind of hard to follow the bouncing balls here. So there was a South Carolina Court of Appeals decision with regard to Mr. Stobbsville and apparently in that case raised an ADA claim, a Medicaid claim for lack of proper notice and due process. Yes, Your Honor. So those were decided by the South Carolina courts and then there was a risk of institutionalization issue. All of these are raised in the plaintiff's federal complaint and that was remanded back for further proceedings. Is that right? That is correct, Your Honor. So in that case, why wouldn't the traditional doctrines of race judicata or collateral estoppel apply before you even get to abstention? I believe off the top of my head that when the case was dismissed, the Court of Appeals was still pending or it was either on appeal. Ms. Harrison did appeal that to the State Supreme Court. The State Supreme Court granted certiorari. Oral arguments were held and then at the conclusion of oral arguments, they issued an order dismissing it as improvidently granted and I believe we were representing to Judge Anderson that it wasn't final yet because it was still on appeal. So in reflection, the Court of Appeals issued an opinion, but it was on appeal by Ms. Harrison to the State Supreme Court. So I don't know if it was given claim preclusion or race judicata based on those grounds. So the South Carolina Supreme Court found there was not a final judgment because the risk of institutionalization issue was still being litigated in the state courts? No, sir. Judge Anderson did not dive into whether there was an issue preclusion, claim preclusion, or race judicata. I know that, but that was the purpose of the question to try to figure out where things were in the South Carolina courts to see whether or not race judicata or collateral estoppel would apply to these claims nonetheless. I think certainly they would have applied now. I do believe that because it was on appeal to the State Supreme Court, there's a question of whether the Court of Appeals decision was final. All right. We sent this back once before because the retaliation claims weren't adjudicated. Yes, Your Honor. So they were adjudicated. Yes, sir. Is there a retaliation claim that's part of this appeal? I did not locate it in the briefs, Your Honor. I presented as part of my cross-appeal the decision not to grant judgment as a matter of law because there's only five paragraphs in the complaint that deals with retaliation. Can you appeal when you won below? Well, I did it as a precautionary measure because I did. I assumed that she would have raised the retaliation issue as a possible defense, so I didn't want to just not bring it up. But I think it's moot. I don't think she's. So you've raised the cross-appeal, but your primary argument, am I right in this, is that you think that the retaliation, there is no retaliation issue in front of the court. That's correct, Your Honor. It would essentially moot my cross-appeal because she did not appeal the retaliation decision, in my opinion. All right. It's not in the statement of issues. Yes. Correct, Your Honor. It is not in the statement of issues. We've also lost, if I'm keeping track right, we've lost the there's no longer an appeal from the finding that the Medicaid Act had not been violated. Isn't that right? Under the 1983 actions. Right. There's still a claim that the ADA was violated, but I think no longer a claim. That's my understanding. Okay. My understanding is the appeal as to my client's deal essentially is, Judge Anderson should not have dismissed the stop-and-steal claim, and it was erroneous to find that Mr. Levin did not face a serious risk of institutionalization. And there are some other issues raised about notice and what we'd like to get done, but I don't think those are really the main issues. That are before the court today. And I'll be happy to discuss the Levin issue or discuss further about abstention, but I believe Mr. Skoskis got the relief he sought and needed through the state appeal process, which is required under the fair hearing, which is required under the Medicaid Act. There is a dispute. He would like some of his hours transferred, 56 hours transferred from personal care to nursing. And the problem is he has an undiagnosed kidney stone condition. We had a, during the retaliation part of the case, we had testimony from the medical director that said he reviewed all these nursing notes and it's just happenstance that he has these flare-ups when he did, which was when the nurse wasn't present. He said there's no actual medical evidence that ties in whether a nurse is present to when the gentleman would have this particular condition flare-up. His own doctor even said that during a deposition testimony. So the decision is not because there's caps. The decision not to provide those nursing hours is because there's no medical relationship between treating his condition, other than that's just when it seemed to happen. Can I ask you just a quick question about your other cross-appeal, which is are you still cross-appealing the district court finding that there was a violation on notice of feasible alternatives? We did re-raise that, Your Honor. Okay, and the relief granted there was declaratory judgment? It was a finding that the client violated the act, but there was no relief essentially given. There was no relief. Yes, Your Honor. Okay, so is this an important claim to you? At the time it was. I was concerned about having prospective effect on other clients, other participants. It is my understanding now that it's not an issue in this case because at least the Department of Disability and Special Needs is supposed to present I believe it's a handout that lists all the services available under the waiver. So that would cure, again, I think that issue. And that's why I really didn't focus on these cross-appeals. It was really more protective and just keeping it along with what we did back in the day. But I was concerned about it at the time. Understood. Is there any other particular questions the court would like me to answer? I know it's well-briefed. I've tried this case three times in federal court, one time in administrative appeal. I'll be happy to answer any questions. But I would just think that Mr. Stogsdill and Mr. Levin are getting services in excess of the caps. The waiver document has been changed to now provide that extra services can be provided if there is a serious risk of institutionalization. And that Judge Anderson clearly gave detail. He lit so much evidence in this case. I don't think anything was held out. I think every piece of evidence that Ms. Harrison wanted to at least present the court proper was taken under advisement by Judge Anderson. And the orders that he issued, I think, are very detailed. So one last, on the feasible alternatives cross-appeal, you want the court to do what? At the time, I don't believe that because the court's prior holdings is that you don't have to tell the person of each particular service. It was an error for Judge Anderson to find that the feasible alternatives were violated because there was never an issue of needing extra services. And my time has expired. I'll be happy to answer. So, I mean, are you saying that it's moot or what? Are you saying that your cross-appeal is moot? I think the issue that I – the reason why I raise it initially has been corrected through new handouts that are given to participants that list every single service available under the where. So I guess one way to phrase it would be moot. It's been corrected through our own agency's actions. Okay, thank you. Thank you, Judge. Thank you. Ms. Robin Marcus. Good morning, Your Honor. I'm Stephanie Marcus from the Department of Justice, and I represent the federal defendants. In this case, the district court correctly dismissed the federal defendants because there is – plaintiffs did not allege a cognizable claim under the APA because their allegations are committed to agency discretion under the law. And in addition, even assuming arguendo they weren't, the challenge to the approval of the waiver where the cap in services was put in place is now moot. I think that plaintiff's counsel in her presentation, her reference to the Olmstead guidance, and to show that at bottom what they're objecting to is alleged violations by the state defendants of AD and Rehabilitation Act requirements. So tell us just very succinctly, what do you understand the plaintiff's claim against your clients to be? I think actually there in her opening brief, Ms. Harrison started it by we think that they fall into two categories. One is just a quintessential action or inaction that's committed to agency discretion, which is, quote, the complaint failing to perform the duties intended by Congress in the management and oversight of the Medicaid program. Basically the allegations are that CMS did not monitor or enforce or bring compliance actions sufficiently against the state defendants, which allowed them to allegedly violate the Medicaid statute, the APA, and the Rehabilitation Act. But that is committed to agency discretion under law. And to the extent, and it is a little difficult to tell from the complaint in the briefing, but to the extent they are challenging the approval itself, they were challenging the approval because it allegedly allowed the defendants to violate their Olmstead obligations under the ADA and the Rehabilitation Act. And that is not the, as our brief and the Federal Register excerpts that we have in our addendum show that CMS and HHS do not enforce the Rehabilitation Act or the ADA. And I may be misstating, but I think I understood Ms. Harrison to suggest that CMS can require an exemption to the South Carolina Waiver Program and could perhaps require South Carolina to remove the caps. Your Honor, that is not available relief under the APA. That is not here. The services, the home and community-based services in question here, those are optional. And so even if a state has a state Medicaid plan, it does not have to provide under the Medicaid statute these home and community-based services. So if the Secretary, if a waiver or a program like this were vacated, then all the state needs to do under the regulations is give 30 days notice, and it could provide zero hours of services under the Medicaid statute.  But that would, and I think actually this Court's and the South Carolina Court's precedent cited by the plaintiffs show that there is an adequate remedy for those types of violations available in court under the ADA and the Rehabilitation Act against the state. But the plaintiff's claim against your clients is just under the APA,  Yes, that's right, Your Honor. And we think that was correctly dismissed, and though you don't need to reach that for the reason that it was correctly dismissed as committed to agency discretion under law, I did just want to refer the Court to footnote two on page 10 of our brief where we have a hyperlink to the CMS website, and you can see where the current, what the current waiver amendments are. And as we noted in our brief, there are new renewals in effect, and one of those, which was effective July 2013, has been renewed yet again, 2018. So if there are no further questions, we just ask that the Court affirm the District Court's judgment. Thank you. Thank you. For the Federalist Penance. Thanks. So much to say in so little time. I'll briefly address the CMS issue. It's ongoing. It keeps going, and the state of the law now in South Carolina is that state courts will not even consider ADA. They will not consider reasonable promptness claims. They will not receive consider reasonable standards claims. According to Stodstall, which was adopted by the South Carolina Supreme Court in Joseph, CMS, their approval of this waiver document, supersedes federal law, state law, regulations. They make the law. But there are a couple other things I really want to get to. The issue of our Medicaid Act claims, Judge Harris, those are still very much alive. In this case. Did you brief them? Yes, on the reasonable promptness and the failure to provide the services with reasonable promptness. I think it may be issue four. Okay. But here we have yet another case, a third case that's come to this Court. I'm sorry, that's your due process argument? Yes, Your Honor. But not a statutory argument that they violated the Act. Well, that includes the reasonable promptness issue under 1983, which was the Doty Kidd case. And this is my third time up here on a case, I think it's the third time, where a speech device has been denied for years. So while this is pending, we had to file another administrative appeal for Richard, I mean for Rob, and the issue of the risk of institutionalization, they're saying that that's not an issue anymore. Well, Your Honor, they're still arguing that he's not at risk of institutionalization, even though he was in the hospital for nine months. And on the one hand, they're saying he's not at risk of institutionalization, and on the other hand, they're saying that we're giving him more hours than the caps. So this is an Alice in Wonderland land that we practice in. So is there a retaliation issue that's part of your appeal? There were so many issues in this case, Judge Agee, that we felt that our strongest issues and the standard that we had to meet. You waived it, right? We waived it. So the answer is no, there's no retaliation issue. But I think we waived it because these others are so important. One of those is the ruling that there's a one-year statute of limitation for the ADA. Your Honor, Judge Anderson said that that's the rule based on the South Carolina Human Affairs Commission. Can I just stop you? Because I actually have some questions about that ruling, but it doesn't matter because it was sort of an alternative holding, right? The judge also found that putting to one side any limitations problem, so this wasn't any evidence here. Oh, it's really important because it will be the law in South Carolina and people will be limited to one year. Well, we have a new decision since we were all asked together. The Fourth Circuit has actually issued a new decision on this, and I think that that will probably help to clarify this. Because the Human Affairs Commission itself says it's a three-year statute of limitations for public accommodations. I think what Judge Harris's question is suggesting is that that issue has probably been addressed. Or some other decision. It's just so wrong and it hurts my people so much, so it's just very important. As to the, well, they've gotten everything they need, I'd call your attention, Your Honor. Your Honors. My question, though, just to clarify, was not to suggest that they've gotten everything they need, but I'm trying to understand what the difficulty that I've had here is understanding exactly what relief you are seeking that we can give you that is attributable to the waivers. Especially since the waivers occurred, what happened pinning the concerns that you've articulated to the waivers as the cause, which we can do something about? What's the injury that's attributable to the waivers? That's been a large part of what my questions have gone to. It has nothing to do with questioning the legitimacy of your seeking adequate services for the people you represent. It's just trying to understand what the action is that we're called upon to address and what relief is available as a result of those actions under the law. We want, when they renew a waiver, every time CMS to be required, not to just stamp approve, but to require that they comply with their own rules, the OMSA update and the ADA. But may I please say something really quickly? Our time's running out about the due process issue. These cases are all I do. I've got one or two other hang-on cases. But every time we win and the state court or this court remands it back, and in the administrative hearings, they fall off the face of the earth. There is never a final order. In the state Medicaid manual, it says that a remand is not a substitute for a final order. So when the Court of Appeals remanded Stogstall's case. Didn't they say you lost on your due process issue in the state court? Of course, South Carolina Court of Appeals. That's another issue that we have before. The South Carolina Court of Appeals. Is that what the South Carolina Court of Appeals said? They said that all we are entitled to is a hearing. And if you get a hearing. So you lost on due process there, correct? Right. But I believe because we're alleging a constitutional violation, we can still come to this court because giving someone a hearing doesn't. Were you not alleging a constitutional violation in the South Carolina Court of Appeals? This is really important. In their hearings, they won't allow constitutional violations. They said they don't have jurisdiction. So in the South Carolina Court of Appeals, you were not raising a constitutional claim. No, because it came up from the HHS. I understand, but I thought that in that court you had said what happened below was unconstitutional. And they said you got a hearing so you got due process. Right, so you lost your constitutional claim in the South Carolina. But the fair hearing officers have repeatedly said, we will not listen to reasonable promptness claims. We will not. We have no jurisdiction over reasonable standards. We have no jurisdiction over a constitutional claim. So what's really important to understand is that in September 2014, the Court of Appeals remanded and said you shall do an assessment. What this court has said is that within 90 days, you have to issue a final decision. No assessment has yet been done. Months later, they sent a doctor who said, I can't do an assessment. So in Peter B., in Levin, and all of these, just in November. Are you still responding to Judge Harris' question? Because your time has expired. So if you, I'm trying to determine, if you want to summarize, please do so. Unless you're still answering the question. May I summarize? Oh, yes. Okay, and I'm sorry I ran out. Not at all. We have a state of affairs in South Carolina where the law is not established by Congress, but it's established by a bureaucrat in Atlanta making an agreement with a bureaucrat in Columbia, South Carolina. We have a fair hearing system that every time it gets remanded, nothing happens. There's no assessment. There's no physician. There's no rules. So we would ask that you look at our briefs and consider the issues that we've raised today. The ADA statute of limitations issue is really important to my people, as is the other 1983 claims. And please remember, we're bringing these as a private attorney general because there are thousands of people who, when they ask for more than 28 hours a week at PCA, they are still being told that there's caps on those services. Thank you, Your Honor. Thank you very much.
judges: Allyson K. Duncan, G. Steven Agee, Pamela A. Harris